UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JENNIFER SUE DEFRAIN,

        Plaintiff,               CASE NO. 14-10002
                                          HON. DENISE PAGE HOOD

v.

COMMISSIONER OF
SOCIAL SECURITY,

        Defendant.
_____/

**OPINION AND ORDER
DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT,
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT,
AND DISMISSING ACTION**

### I.    BACKGROUND/FACTS

**A. Procedural History**

On January 2, 2014, Plaintiff Jennifer Sue Defrain ("Defrain") brought this action pursuant to 42 U.S.C. § 405(g) seeking reversal of the final decision of Defendant Commissioner of Social Security ("Commissioner") denying Defrain's applications for Social Security Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act. Both parties filed motions for summary judgment. (Doc # 27; Doc # 36)

Defrain filed an application for DIB and SSI in March 2011 alleging disability beginning on February 12, 2011. (Administrative Transcript "Tr." 185-

1

98) Her claims were denied, and she requested a hearing before an administrative law judge ("ALJ"). (Tr. 121-39, 142-43) On August 14, 2012, the ALJ held a hearing at which Defrain and a Vocation Expert ("VE") testified. (Tr. 31-71) The ALJ issued a decision on August 24, 2012 finding that Defrain was not disabled. (Tr. 8-29) The ALJ's decision became the final decision of the Commissioner on October 28, 2013, when the Appeals Council denied Defrain's request for review. (Tr. 1-3)

## B. ALJ's Decision

A "disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A). The Commissioner determines whether a claimant is disabled by analyzing five sequential steps. First, if the claimant is "doing substantial gainful activity," he or she will be found not disabled. 20 C.F.R. § 416.920(a)(4). Second, if the claimant has not had a severe impairment[1] or a combination of such impairments for a continuous period of at least 12 months, he or she will be found not disabled. *Id.* Third, if the claimant's severe impairments meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, he or she will

---

[1] A severe impairment is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c).

be found disabled. *Id.* If the fourth step is reached, the Commissioner considers its assessment of the claimant's residual functional capacity ("RFC"), and will find the claimant is not disabled if he or she can still do relevant work. *Id.* At the final and fifth step, the Commissioner reviews the claimant's RFC, age, education, and work experience, and determines whether the claimant could adjust to other work. *Id.* The claimant bears the burden of proof throughout the first four steps, but the burden shifts to the Commissioner if the fifth step is reached. *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994). The same standards apply to both claims for DIB and applications for SSI. *See* 20 C.F.R. §§ 404.1520, 416.920.

Applying this framework, the ALJ concluded that Defrain was not disabled. At the first step, he found that Defrain had not engaged in substantial gainful activity since the alleged onset date. (Tr. 13) At the second step, he found that Defrain had severe impairments of "fibromyalgia, carpal tunnel syndrome, sleep apnea, degenerative disc disease, valvular heart disease, peripheral vascular disease, obesity, temporomandibular joint dysfunction, and migraine headaches." (Tr. 14) At the third step, the ALJ concluded that none of Defrain's impairments, either alone or in combination, met or medically equaled the severity of the listed impairments. (Tr. 16)

At the fourth step, the ALJ found that Defrain had the RFC to perform sedentary work with several exertional and non-exertional limitations:

> she would require the ability to alternate between sitting and standing at will, provided she is not off task more than 10 percent of the work period. She must avoid repetitive rotation, extension, and flexion of her neck. The claimant can occasionally perform overhead reaching activities with her bilateral upper extremities. She can only occasionally climb ramps and stairs but can never climb ladders, ropes, or scaffolds. The claimant can occasionally balance, stoop, kneel, and crouch. She can have no exposure to vibration and must work in a quiet work environment. She can occasionally use foot controls with her bilateral lower extremities. The claimant can have no exposure to unprotected heights and exposure to moving machinery. Giving the claimant the benefit of the doubt, she is limited to simple tasks. She would be unable to perform at a production rate pace, such as assembly line work, but she could perform goal-oriented work. The claimant can have occasional interaction with supervisors, coworkers, and the public. She is limited to one and two-step tasks. The claimant is limited to low stress jobs, defined as having only occasional decision making, occasional changes in work setting, and the occasional use of judgment.

(Tr. 17) Due to these limitations, the ALJ found that Defrain could not perform any past relevant work as a nurse aid, cashier, or assistant store manager due to the skill levels and exertional demands of those positions. (Tr. 23)

After considering Defrain's age (30 years old at the alleged onset date), education (eighth grade education and some vocational training), work experience, RFC, and testimony from the VE, the ALJ found at the fifth step that Defrain could

perform a significant number of other jobs in the regional and national economy, including inspector (1,000 jobs in Michigan), general office clerk (3,000 jobs in Michigan), and account clerk (1,000 jobs in Michigan). (Tr. 23-24) The ALJ concluded that Defrain was not disabled. (Tr. 24)

Defrain seeks reversal of the final decision of the Commissioner on two grounds arguing that: (1) the ALJ erred at the fourth step by not giving controlling weight to the opinion of her treating physician in determining her RFC, and by not providing good reasons for failing to do so; and (2) the ALJ erred at the fifth step by failing to resolve conflicts between the VE's testimony and the Dictionary of Occupational Titles ("DOT"), and by not specifying the frequency of the sit-stand option.

## II. ANALYSIS

### A. Standard of Review

Judicial review of the Commissioner's decision is limited in scope to determining whether the Commissioner employed the proper legal criteria in reaching his conclusion. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). The credibility findings of an ALJ must not be discarded lightly and should be accorded great deference. *Hardaway v. Sec'y of Health & Human Servs.*, 823 F.2d 922, 928 (6th Cir. 1987). A district court's review of an ALJ's decision is not a *de novo* review. The district court may not resolve conflicts in the evidence nor

5

decide questions of credibility. *Garner*, 745 F.2d at 387. The decision of the Commissioner must be upheld if supported by substantial evidence, even if the record might support a contrary decision or if the district court arrives at a different conclusion. *Smith v. Sec'y of Health & Human Servs.*, 893 F.2d 106, 108 (6th Cir. 1984); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 484 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks and citation omitted).

The significant deference accorded the Commissioner's decision is conditioned on the ALJ's adherence to governing standards. "Chief among these is the rule that the ALJ must consider all evidence in the record when making a determination, including all objective medical evidence, medical signs, and laboratory findings." *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 723 (6th Cir. 2014); *see also, Rogers*, 486 F.3d at 249. In other words, substantial evidence cannot be based upon fragments of the evidence, and "must take into account whatever in the record fairly detracts from its weight." *Garner*, 745 F.2d at 388 (internal quotation marks and citation omitted).

The Commissioner must also adhere to its own procedure, but failure to do so constitutes only harmless error unless the claimant has been prejudiced or

6

deprived of substantial rights. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 654 (6th Cir. 2009). On the other hand, substantial errors like ignoring evidence in the record or failing to follow the treating physician rule are not harmless. *Id.*; *Cole v. Astrue*, 661 F.3d 931, 940 (6th Cir. 2011); *Gentry*, 741 F.3d at 729.

### B. Weight Accorded to Treating Physician's Opinion

Defrain first argues that the ALJ erred by failing to give controlling weight to the opinion of her treating neurologist, Dr. Gavin I. Awerbuch ("Dr. Awerbuch"), in determining her RFC, and by not providing good reasons for failing to do so. Defrain asserts that the ALJ "never specified which parts of the opinions . . . he accorded 'some weight' [to], nor which parts he found to be consistent or inconsistent with the medical evidence or the longitudinal treatment record, nor what those consistencies or inconsistencies included, nor any basis in the evidence to support finding any inconsistency."

The Commissioner responds that the ALJ sufficiently set forth his rationale for the weight that he gave to each portion of Dr. Awerbuch's opinion, which is evident upon review of the ALJ's discussion of the evidence.

The "treating physician rule" requires an ALJ to give controlling weight to a treating physician's opinions regarding the nature and severity of a claimant's condition when those opinions are well-supported by medically acceptable clinical and diagnostic evidence, and not inconsistent with other substantial evidence.

*Gentry*, 741 F.3d at 727-29; *Rogers*, 486 F.3d at 242-43. If an ALJ gives less than controlling weight to a treating source's opinion, he must provide "good reasons" for doing so that are "supported by the evidence in the case record, and . . . sufficiently specific to make clear to any subsequent reviewer the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight. *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375 (6th Cir. 2013) (quoting 20 C.F.R. § 404.1527(c)(2); Social Security Ruling ("SSR") 96-2p, 1996 WL 374188, at *5 (July 2, 1996)). Courts will not hesitate to remand when the ALJ failed to articulate "good reasons" for not fully crediting the treating physician's opinion. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 545 (6th Cir. 2004). However, the regulations do *not* require the ALJ to engage in "an exhaustive factor-by-factor analysis" of each of the factors listed in 20 C.F.R. § 404.1527 (the length, frequency, nature, and extent of the treatment relationship; the supportability and consistency of the physician's conclusions; and the specialization of the physician). *Francis v. Comm'r of Soc. Sec.*, 414 F. App'x 802, 804 (6th Cir. 2011); *Brock v. Comm'r of Soc. Sec.*, 368 F. App'x 622, 625 (6th Cir. 2010).

The opinion specifically at issue here is an undated, one-page Medical Source Statement completed by Dr. Awerbuch. (Tr. 442) Dr. Awerbuch listed Defrain's diagnoses as fibromyalgia, carpel tunnel syndrome, cervical facet

syndrome, chronic migraines, excessive daytime somnolence, depression, and adjustment disorder. Dr. Awerbuch opined that Defrain's impairments resulted in limitations to lifting less than 10 pounds, standing and walking for a total of 2 hours in an 8-hour workday, sitting less than 6 hours in an 8-hour workday with the need to alternate, moderate limitation in upper and lower extremities, and "no keyboarding, bright lights, noises, or fumes." Dr. Awerbuch also opined that the limitations had been present since 2009 and would likely disrupt a regular job schedule with low physical demands ">40 hrs" out of the 160 working hours in a month.

At the hearing, the ALJ asked the VE to assume a hypothetical individual of Defrain's age, education, with her past jobs, and with the following limitations:

> assume that the hypothetical individual is limited to less than a full range of sedentary with the further limitations of the individual would require a sit/stand option which would allow a person to sit or stand alternately at will provided that the person is not off task more than 10% of the work period; the individual would avoid repetitive rotation, flexion, or extension of the neck; the individual . . . would only be able to occasionally reach bilaterally overhead; the individual would only occasionally be able to climb ramps and stairs; never climb ladders or scaffolds; occasionally balance, stoop, kneel, crouch; the individual would be limited to a workplace that has no vibration and the noise level would be quiet; the individual would be limited to simple tasks; . . . the individual would not be able to perform at a production rate pace such as assembly line work, but could perform goal oriented work; the individual would interact occasionally with supervisors, coworkers, and the public.

9

> . . . [T]he individual would have foot control operation . . . at occasional; the individual would avoid all unprotected heights and exposure to moving machinery; again the work would be limited to one- or two-step tasks; . . . the work would be considered a low-stress job defined as . . . having just occasional decision making instances, occasional use of judgment.

(Tr. 66-67) The VE testified that the individual with all of the aforementioned limitations would be able to perform the sedentary, unskilled work of inspector, general office clerk, or account clerk. (Tr. 67-68) During cross-examination, Defrain's attorney asked the VE what percentage of the time a person could be off-task on a continuing basis before it became work preclusive. The VE replied, "Generally 20%." (Tr. 69) Defrain's attorney then asked how many days per month could a person be absent on a continuing basis before it became work preclusive. The VE replied, "One day per month if it's unpredictable." *Id.*

In his decision, the ALJ accorded "little weight to Dr. Awerbuch's opinion that the claimant can only work less than 40 hours a week, as it is an issue reserved for the commissioner and inconsistent with the claimant's longitudinal treatment record." (Tr. 22) The ALJ accorded "some weight to the functional limitations provided by Dr. Awerbuch to the extent they are consistent with the medical evidence of record." *Id.* The Court finds that the ALJ's decision to reject parts of Dr. Awerbuch's opinion was supported by substantial evidence in the record, and

that the ALJ provided "good reasons" in his decision sufficient to inform Defrain of why aspects of Dr. Awerbuch's opinions were not being credited.

The Court finds it significant that the ALJ did not "reject wholesale" the conclusions of Dr. Awerbuch and incorporated many of them throughout his decision. *See Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 391-92 (6th Cir. 2004). Dr. Awerbuch diagnosed Defrain with fibromyalgia, carpel tunnel syndrome, cervical facet syndrome, chronic migraines, excessive daytime somnolence, depression, and adjustment disorder. In turn, the ALJ found that Defrain had fibromyalgia, carpal tunnel syndrome, degenerative disc disease, migraine headaches, and sleep apnea—as well as additional findings of valvular heart disease, peripheral vascular disease, obesity, and temporomandibular joint dysfunction. The ALJ further gave Defrain the benefit of the doubt on issues related to depression and adjustment disorder, limiting Defrain to simple one- or two-step tasks, low-stress jobs with only occasional decision making and use of judgment, and only occasional interaction with others. In accordance with Dr. Awerbuch's opinion that Defrain could lift less than 10 pounds, and could stand and walk for a total of 2 hours in an 8-hour workday, the ALJ limited Defrain to less than a full range of sedentary[2] work. In accordance with Dr. Awerbuch's

---

[2] The regulations provide that sedentary work includes lifting no more than 10 pounds at a time, and standing and walking no more than approximately 2 hours in an 8-hour workday. 20 C.F.R. §§ 404.1567(a), 416.967(a); Social Security Ruling ("SSR") 83-10, 1983 WL 31251, at *5.

11

opinion that Defrain needed to alternate between sitting and standing, the ALJ provided that Defrain would require the option to sit or stand alternately at will.[3] In accordance with Dr. Awerbuch's opinion that Defrain had moderate limitations in her upper extremities, the ALJ limited Defrain to only occasional bilaterally overhead reaching. In accordance with Dr. Awerbuch's opinion that Defrain had moderate limitations in her lower extremities, the ALJ limited Defrain to only occasional foot control operation and occasional climbing of ramps and stairs, as well as no climbing of ladders or scaffolds. In accordance with Dr. Awerbuch's opinion that Defrain could not be exposed to bright lights, noises or fumes, the ALJ limited Defrain to no exposure to vibration or moving machinery, no assembly line work, and to a quiet work environment.[4]

Defrain asserts that the ALJ ignored documented medical signs and laboratory findings, specifically her limitation of cervical and lumbar motion, lower extremity weakness with diminished sensation and reflexes and positive straight leg raising, palpable muscle spasms, positive trigger points, EMG

---

[3] Sedentary work includes approximately 6 hours of sitting in an 8-hour workday. *See id.* Dr. Awerbuch opined that Defrain was limited to sitting less than 6 hours in an 8-hour workday. However, the ALJ included the option to sit or stand at will, so that Defrain would have the option of sitting for less than 6 hours in an 8-hour workday.

[4] The Court further notes that, at the hearing, the VE testified that a person could be off-task on a continuing basis for 20% of the time before it became work preclusive (20% of 160 working hours in a month is 32 working hours). The VE further testified that a person could be absent for one day (8 working hours) per month before it became work preclusive. That adds up to 40 working hours per month disrupted before becoming work preclusive, which is close to Dr. Awerbuch's estimate that Defrain's limitations would likely disrupt ">40 hrs" out of the 160 working hours in a month.

performed by Dr. Awerbuch, and lumbar and cervical spine MRIs ordered by Dr. Awerbuch. However, the ALJ expressly considered all of these in his decision. The ALJ acknowledged evidence of limited range of cervical and lumbar motion, lower extremity weakness with diminished sensation and reflexes, positive straight leg raising, palpable muscle spasms, and positive trigger points. (Tr. 19-20) The ALJ discussed the EMG findings, which showed bilateral L5 radiculopathy and peripheral neuropathy. (Tr. 21, 439) The ALJ discussed the lumbar and cervical spine MRIs, which showed mild and minimal findings respectively. (Tr. 20, 441, 360) The Court concludes that Defrain has failed to identify any evidence that the ALJ did not discuss and/or that would have indicated a need for greater or different limitations than those the ALJ adopted as discussed above.

Next, Defrain contends that the ALJ misrepresented Dr. Awerbuch's opinion because Dr. Awerbuch only opined that Defrain's limitations would likely disrupt a regular job schedule with low physical demands ">40 hrs" out of the 160 working hours in a month—not that Defrain could only work less than 40 hours a week. However, the Commissioner notes, and the Court agrees, that the ALJ nevertheless captured the essence of Dr. Awerbuch's opinion in describing this limitation as an ability to work less than 40 hours per week, which is inferable from Dr. Awerbuch's statement that Defrain's limitations would likely *disrupt* the demands of work for more than 40 hours out of 160 hours.

13

The ALJ was not required to defer to Dr. Awerbuch's opinion that Defrain's limitations would likely disrupt a regular job schedule with low physical demands ">40 hrs" out of the 160 working hours in a month. This portion of the opinion is more an "opinion of disability" (not entitled to deference and reserved for the Commissioner under the regulations) than it is a medical opinion (an opinion reflecting judgments about the nature or severity of Defrain's impairments; her symptoms, diagnoses, or prognoses; or her specific restrictions or abilities). *See* 20 C.F.R. § 416.927(c), (d)(1); *Gayheart*, 710 F.3d at 375.

There is substantial evidence supporting the ALJ's determination that this portion of Dr. Awerbuch's opinion was not consistent with the record as a whole. The ALJ noted that in May 2011, Defrain reported to Dr. Awerbuch that she had started an exercise routine and was seeing a trainer every day of the week, using an elliptical machine, using a treadmill, and lifting weights. (Tr. 20, 437) The ALJ noted that in September 2011, Defrain complained of becoming tired easily but reported that she continued to exercise and that her medication was working okay. (Tr. 20, 436) The ALJ noted that a CT of Defrain's brain, dated September 4, 2011, was normal. (Tr. 20, 423) The ALJ noted that Defrain reported adequate pain relief with her medications and improved activity levels without adverse effects during a visit with Dr. Awerbuch on December 5, 2011, despite reports that she had increased her activity and her pain had worsened. (Tr. 20-21, 434-35) The

14

ALJ noted that in March 2012, Defrain reported good results from cervical facet injections, which had been beneficial in decreasing the severity of her symptoms. (Tr. 21, 429, 431) The ALJ found that Defrain's medications had been relatively effective in controlling her symptoms. (Tr. 22)

The ALJ also considered Defrain's testimony at the hearing and found that she was not fully credible as to the extent of her impairments in light of the objective medical evidence in the record. (Tr. 22) The ALJ discussed his reliance on Defrain's ability to take care of her four young children as a single mother without any particular assistance. *Id.* The ALJ also noted that Defrain's daily activities were not limited to the extent one would expect. *Id.* These daily activities included preparing her children for school, preparing simple meals, cleaning, folding laundry, driving a car, grocery shopping, reading, watching television, carrying out a daily exercise routine, using an elliptical machine and a treadmill, lifting weights, and increasing her activity level in December 2011. (Tr. 22, 59-60, 62-64, 250-57, 434, 436-37)

Because Dr. Awerbuch's opinion is inconsistent with other substantial evidence in the case record, and his conclusion regarding the number of hours Defrain would be able to work addresses an issue reserved to the Commissioner, the Court concludes that the ALJ did not err and acted within his discretion in refusing to defer to some portions of Dr. Awerbuch's opinion as discussed above.

The Court further concludes that the ALJ provided "good reasons" in his decision, apparent upon reading his detailed discussion of the evidence in the record, and sufficient to inform Defrain of why aspects of Dr. Awerbuch's opinions were not being credited.

### C. ALJ's Step 5 Determination

Defrain next argues that the ALJ erred at the fifth step by failing to resolve conflicts between the VE's testimony and the DOT, and by not specifying the frequency of the sit-stand option. Defrain asserts that the ALJ's failure to request and the VE's failure to provide specific citations to the DOT make it impossible to support the VE's testimony as required by SSR 00-4p.

The Commissioner responds that the ALJ was not obligated to obtain DOT citations, or to even rely on DOT information. The Commissioner argues that Defrain's argument is meritless where her attorney made no effort at the hearing to identify any inconsistency between the VE's testimony and the DOT.

Social Security regulations do not oblige the ALJ or the VE to rely on the DOT. *Wright v. Massanari*, 321 F.3d 611, 616 (6th Cir. 2003). The fact that a VE may use different terminology than the one found in the DOT to describe employment positions does not establish a conflict between the two sources of evidence. *Lindsley v. Comm'r of Soc. Sec.*, 560 F.3d 601, 605 (6th Cir. 2009). The regulations do not require the ALJ to conduct his own investigation into the VE's

testimony to determine its accuracy, especially when the claimant or her representative fail to bring any conflict to the attention of the ALJ. *Ledford v. Astrue*, 311 F. App'x 746, 757 (6th Cir. 2008) ("Furthermore, neither the testimony of a vocational expert nor the occupational descriptions in the Dictionary of Occupational Titles necessarily trumps the other."); *see also, Sims v. Comm'r of Soc. Sec.*, 406 F. App'x 977, 982 (6th Cir. 2011) ("Yes, the vocational expert's testimony could have been further refined; but as the district court pointed out, plaintiff's counsel had the opportunity to cross-examine, but asked only one question and did not probe the deficiency now identified on appeal.")

In this case, after considering the hypotheticals and limitations discussed above, the VE testified that the hypothetical individual could perform the sedentary, unskilled work of inspector, general office clerk, and account clerk. The ALJ asked the VE whether her testimony was consistent with the DOT, and the VE replied, "Yes." (Tr. 67) Defrain's attorney had the opportunity to cross-examine the VE and asked her three questions, none of them regarding any conflict with the DOT. (Tr. 69)

The Court finds that the ALJ satisfied his obligation under SSR 00-4p by asking the VE whether her testimony was consistent with the DOT. The VE credibly testified that it was consistent, and Defrain was afforded a full opportunity to cross-examine the VE. The ALJ had no duty to interrogate the VE further. The

Court concludes that Defrain has failed to show that the ALJ erred in evaluating the testimony of the VE, and failed to show any apparent or actual conflict between the VE's testimony and the DOT at the hearing or now.

Defrain's last argument is that the ALJ's failure to specify the frequency of Defrain's need to alternate between sitting and standing as required by SSR 96-9p shows that his ultimate finding at the fifth step was not supported by substantial evidence. The Commissioner responds that the ALJ was specific as to the sit-stand frequency in determining that Defrain would need to alternate sitting and standing "at will." Courts in this district have found that the ALJ need not specify increments of sitting and standing when, as here, the ALJ specifically finds that the claimant must be able to alternate sitting and standing "at will." *See Kepke v. Comm'r of Soc. Sec.*, No. 13-13944, 2015 WL 348747, at *13 (E.D. Mich. Jan. 23, 2015), *aff'd*, 636 F. App'x 625 (6th Cir. 2016) (with the Sixth Circuit adding that "[b]ecause Kepke failed to probe this alleged deficiency at the ALJ hearing, she forfeited this argument."). Defrain's attorney did not probe for more specifics on the frequency of the sit-stand option at the hearing. The Court finds that the ALJ satisfied his obligation under the regulations by specifying that Defrain would need to alternate between sitting and standing at will.

The Court concludes that the VE's testimony constitutes substantial evidence supporting the ALJ's finding at the fifth step of the disability analysis.

## III. CONCLUSION

For the reasons set forth above,

IT IS HEREBY ORDERED that Plaintiff Defrain's Motion for Summary Judgment (Doc # 27) is DENIED.

IT IS FURTHER ORDERED that Defendant Commissioner's Motion for Summary Judgment (Doc # 36) is GRANTED.

IT IS FURTHER ORDERED that this action is DISMISSED with prejudice.


Dated: March 22, 2017	s/Denise Page Hood
	Chief, U.S. District Court


I hereby certify that a copy of the foregoing document was served upon counsel of record on March 22, 2017, by electronic and/or ordinary mail.

	s/LaShawn R. Saulsberry
	Case Manager

19